# WALTER HODGES et al. v. STATE.

No. A-5728.  Opinion Filed July 2, 1927.
Rehearing Denied Oct. 22, 1927.
(259 Pac. 1056.)

J. T. Blanton and Champion, Champion & George, for plaintiffs in error.

M. B. Cope and J. T. McIntosh, for the State.

EDWARDS, J. The plaintiffs in error, hereinafter called defendants, were convicted in the district court of Carter county on a charge of receiving deposits in an insolvent bank, and each were sentenced to pay a fine of $500.

The information is joint and based on section 4128, Comp. Stat. 1921. It alleges that Walter Hodges was president and a director, the defendant P. W. McKay was vice president, the defendant W. L. Reed vice president and a director, and the defendant J. A. Hamilton a director and cashier of the City State Bank of Wilson, and that, while said bank was insolvent and known by defendants to be insolvent, they received and accepted a designated deposit in said bank. The appeal is by transcript; the evidence not being brought up.

Defendants contend that the trial court erred in certain of his instructions, particularly instructions Nos. 3, 9, and 10, and further erred in refusing certain instructions requested by defendants.

Where an appeal is taken by transcript, only the record proper is before the court. The record consists of the indictment or information, a copy of the minutes of the plea or demurrer, a copy of the minutes of the trial, the charges (instructions) given or refused, and the indorsements, if any, thereon, and a copy of the judgment. Section 2777, Comp. Stat. 1921.

Defendants first argue that instruction No. 3 is erroneous. This instruction, in substance, tells the jury that all banks are required to be kept solvent before they are authorized to receive deposits; and, if the capital stock becomes impaired, it is the duty of the officers and directors to make good such impairment before receiving deposits; that the bank is authorized to use the funds on deposit until called for, and, in order to guarantee the return of the deposits when called for, section

4128 of the statute had been enacted, which section is then quoted in the instruction. Defendants assert this is prejudicial as telling the jury that it was the duty of the officers and directors to make good an impairment of the bank's capital before receiving deposits. This instruction is merely one way of saying to the jury that an insolvent bank shall not receive deposits, informing them of the statute that makes it unlawful and giving a reason for its enactment. It cannot reasonably be contended that the instruction is confusing as advising the jury that it is an offense for the officers to have failed to keep and maintain the bank in a solvent condition, or to have failed to make good an impairment of the capital stock. The instruction may contain more words than is necessary, but it is not prejudicially erroneous. Section 4145, Comp. Stat. 1921; 7 C. J. p. 730, §§484—492.

Instructions 9 and 10 are next challenged. Instruction 9 simply advises the jury the amount of reserve required to be kept by banks, quoting, in substance, the provisions of section 4124, Comp. Stat. 1921. Instruction 10 informs the jury that testimony had been introduced tending to show that the bank had not made good its reserve as required by law, but that a failure to make good the legal reserve is not conclusive evidence of insolvency, but such evidence might be taken into consideration in connection with all the evidence as tending to show the financial condition of the bank and the defendant's knowledge of such condition. Defendants admit that instruction 9 is correct as far as it goes, but insist that the jury should have been told that two-thirds of the reserve might consist of balances due from solvent banks, and that the word "reserve" should have been defined. Instruction 9 is sufficiently lucid without any definition of the word "reserve," and instruction 10 is for the benefit of defendants. Testimony that the bank had failed to maintain the reserve required by law tend-

ed to throw light upon the condition of the bank as being insolvent or otherwise and tended to show the knowledge of defendants of the bank's condition, and for this purpose was admissible. Was the bank actually insolvent at the time the deposit was received, and did defendants have knowledge of such condition, was the issue for the jury. Now, if the bank had failed to maintain its reserve as required by law, this was a circumstance to be taken into consideration along with the other evidence for the purpose of determining whether or not the bank was actually insolvent and whether or not the defendants knew of its condition. State v. Syverson, 39 S. D. 638, 166 N. W. 157.

Complaint is next made that the court erred in refusing to give defendants' requested instructions 11 and 19. The instructions are, in substance, that knowledge of the insolvent condition of the bank by defendants is an essential ingredient of the offense, and, before they can convict, they must not only believe the bank was insolvent at the time of the offense charged, but that defendants had knowledge of such insolvent condition, and, if they had a reasonable doubt that defendants believed at the time charged that the bank was insolvent, they should acquit. These instructions contain a fair statement of the law; however, the principles of law covered by these requested instructions are fully covered by the general charge of the court in the court's instructions 4, 8, and 12.

In request No. 16, defendants asked for the following instruction:

"You are instructed, gentlemen of the jury, that the capital stock, surplus, and undivided profits of a bank are a portion of its assets which may be used and employed by the bank in the payment of its liabilities."

It is insisted that this instruction was necessary in order that the jury might determine if the bank was

insolvent. On this point, the court gave instructions 5 and 6, as follows:

"(5) Now, upon the question of insolvency, at the time the bank failed, you are instructed that the bank was insolvent in the sense used in the indictment in either of the following circumstances, to wit: First, if the actual cash market value of the assets of said bank at the time of the deposit referred to in the indictment was insufficient to pay its liabilities or debts, or if it did not have sufficient assets at a fair cash value sufficient to pay its debts; second, if the bank was financially unable to pay its debts or obligations when they became due and to meet the demands of its creditors and depositors in the usual and customary manner.

"And, in this connection, you are further instructed that the inability to pay its debts does not mean a temporary inability to pay its debts such as might occur when there was a run on a bank or failure of the officers of the bank to have enough available cash on any particular day to run the bank that day, or because of any other emergency, but it means an inability to meet the bank's obligations or debts and pay depositors in the usual and ordinary course of business, when given such a reasonable time to get the money as might be expected or required by a bank in carrying on its banking business; in other words, if the bank under ordinary and usual circumstances was unable to get the money, by putting up its collateral and credit for cash with which to pay its debts or depositors in the usual course of business, it was insolvent in the sense used in this indictment.

"(6) You are further instructed that the liabilities of a bank, within the meaning of the instructions herein given, are all sums owing by it to other banks, firms, corporations, or persons, whether for money borrowed or for money deposited with it, either on open deposit or time certificate of deposit; but the amount of the capital stock, surplus, and undivided profits, if any, should not be considered or taken into account as a debt against the bank within the meaning of these instructions."

An instruction very similar to No. 5 was given in

case of Skarda v. State, 118 Ark. 176, 175 S. W. 1190, Ann. Cas. 1916E, 586, cited with approval in Appleget et al. v. State, 33 Okla. Cr. 125, 243 P. 253. Instruction 6 gives a correct rule for the determination of liability of a bank. See 3 R. C. L. 493, par. 120; Ellis v. State, 138 Wis. 513, 119 N. W. 1110, 20 L. R. A. (N. S.) 444, 131 Am. St. Rep. 1022.

It is well settled that is not error for the trial court to refuse a requested instruction, although it may be a correct statement of the law, if the principles covered by such request are covered by the general charge, and that the instructions are to be considered as a whole, and, when so considered, if they fairly state the law applicable to the case, they are sufficient.

On an appeal to this court the presumption is that the case was fairly tried and the verdict and judgment in conformity to evidence and the law, and the burden is on the defendants to show some error which prejudiced their substantial rights. This appeal being by transcript, this court is not in a position to say what evidence was before the trial court. We do not know whether or not defendants testified, whether they admitted or denied insolvency of the bank at the time the deposit in question was received, or whether they admitted or denied knowledge of the insolvency of the bank at that time. The defendants were entitled to instructions defining the law applicable to their theory, if there was competent evidence reasonably tending to substantiate that theory. We do not know whether or not there was any evidence which warranted giving the requested instructions, and, even if we should say that the requested instructions were not covered by the general charge of the court, the evidence not being before us, we cannot say that there was any error in refusing them. It is only where the instructions given would be prejudicially erroneous under any state of facts, or where the

failure to give the requested instructions under any state of facts would be prejudicial error, that defendants would be entitled to a reversal.

The case is affirmed.

DOYLE, P. J., concurring.

DAVENPORT, J., absent, not participating.